[Cite as *State v. Mohamed*, 2025-Ohio-659.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

     Plaintiff-Appellant,              :

                                  No. 23AP-568

v.                                               :         (C.P.C. No. 22CR-5165)

Najah A. Mohamed,                                 :         (REGULAR CALENDAR)

     Defendant-Appellee.               :

---

D E C I S I O N

Rendered on February 27, 2025

---

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Darren M. Burgess*, for appellant. **Argued:** *Darren M. Burgess*.

**On brief:** [*Mitchell A. Williams*], Public Defender, and *Leon J. Sinoff*, for appellee. **Argued:** *Leon J. Sinoff*.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1}  Plaintiff-appellant, State of Ohio, has appealed the August 6, 2023 judgment of the Franklin County Court of Common Pleas finding that defendant-appellee, Najah A. Mohamed's statutory right to a speedy trial was violated, granting Mohamed's motion to dismiss, denying the state's request for a nunc pro tunc entry finding that Mohamed had affirmatively waived his right to a speedy trial on April 3, 2023, and barring the state from reinstituting the prosecution against Mohamed.  On review, we reverse the judgment of the common pleas court and remand this case for trial.

{¶ 2}  On November 3, 2022, Mohamed was indicted for the crimes of purposeful attempted murder and felonious assault, for having allegedly stabbed Abridrasak Issa on October 24, 2022.  Mohamed was arrested and incarcerated on October 26, 2022.  He was arraigned and entered a plea of not guilty to the charges on November 7, 2022.  He was not

released from incarceration on bond until over six months later, on June 8, 2023. He filed a motion to dismiss the charges based upon a speedy trial violation on August 6, 2023. The state filed a memo contra and motion to journalize a nun pro tunc continuance entry on August 10, 2023.

{¶ 3} On August 24, 2023, the trial court filed its entry sustaining Mohamed's motion to dismiss and overruling the state's motion to journalize. Referring to the docket of the case and other relevant record information, the trial court summarized the history of the case as follows, and these facts are not disputed by the parties:

- Defendant was indicted on November 3, 2022. Arraignment was held on November 7, 2022.

- Defendant filed his Demand for Discovery on November 15, 2022.

- Defendant waived his right to a speedy trial at his first scheduled trial date on December 1, 2022 to January 12, 2023. (Def. Mtn., Ex. A).

- Defendant filed a Motion to Modify Bond on December 12, 2022. That motion was orally withdrawn on December 19, 2022.

- Defendant filed a second Motion to Modify Bond on December 21, 2022. The Court did not modify bond after a hearing on January 12, 2023.

- The State of Ohio provided Initial Discovery on January 4, 2023.

- Defendant waived his right to a speedy trial from January 12, 2023 to February 15, 2023. (Def. Mtn., Ex. B).

- Defendant waived his right to a speedy trial from February 15, 2023 to April 3, 2023. The reasons specified were "further investigation; [State] to deliver supplemental discovery." (Def. Mtn., Ex. C).

- The State of Ohio provided Supplemental Discovery on January 30, 2023 and February 23, 2023, respectively.

- The Court held a hearing on April 3, 2023. Counsel for Defendant requested a discovery deadline to receive DNA analysis and medical records from the alleged victim. The State of Ohio indicated that lab testing on the knife would not be available until September 2023. The State admitted [it] was attempting to get the requested discovery materials. The Court continued the trial to May 18, 2023. The transcript is silent as to whether Defendant's speedy trial rights were being waived or invoked. (Def. Mtn., Ex. D, pp. 1- 8).[1]

---

[1] The state indicated its own frustration with the delay in receiving the DNA results:

- **No continuance entry was ever filed from April 3, 2023 to May 18, 2023.** The Court filed a "disposition sheet" continuing the case to May 18, 2023. The "disposition sheet" made no reference to which party requested the continuance or whether Defendant waived or invoked his speedy trial rights. (Def. Mtn., Ex. E).

- On May 16, 2023, Defendant filed a renewed Motion to Modify Bond.

- On May 18, 2023, the Court held a hearing on Defendant's Motion to Modify Bond. Counsel for Defendant indicated all remaining discovery materials were still outstanding. The State asked to continue the Bond Hearing to May 22, 2023 in order to comply with Marsy's Law. (Def. Mtn., Ex. D, pp. 9-14).

- The May 22, 2023 hearing was continued by "disposition sheet" to May 24, 2023 "per agreement of the parties . . . ."

- On May 24, 2023, the Court modified bond to $50,000 cash or surety, $10,000 reporting recognizance with house arrest as a condition of bond. (Def. Mtn., Ex. D, pp. 15-18).

- A continuance entry was filed on June 1, 2023. The entry indicates the case was continued from May 24, 2023 to August 14, 2023. The speedy trial language was crossed out. Instead, the words "Defendant reasserts speedy trial" was handwritten in next to the excised speedy trial waiver. (Def. Mtn., Ex. F).

- Bond was posted on May 30, 2023. However, the electronic monitor for house arrest was not installed until June 7, 2023. Defendant was released from the Franklin County Jail on June 8, 2023. (Def. Mtn., Ex. G).

(Emphasis in original.)  (Aug. 6, 2023 Decision & Entry Granting Def. Mot. to Dismiss ("Decision & Entry") at 2-3.)

---

They're telling people about ten to twelve months, the Columbus Police Department crime lab. So they're very backed up. I've asked what's the way -- if there is a way to advance something up the ladder, and I was told nothing because everything is essentially, you know, high priority, equal priority. But to expect that results in this case would come back in September of 2023, of this year, which would be about 11 months from when it was sent to the lab for testing.

(Apr. 3, 2023 Tr. at 5.)

The trial court, in response, indicated that it would treat May 18th "kind of like a soft deadline for any discovery issues" which would "give the State a chance to respond in writing before, you know, if the Court were going to take significant actions such as excluding certain items of evidence. . . ." *Id.* at 7.

The court did not state that either party requested a continuance—it sua sponte set May 18, 2023 as the date for the next hearing and ordered motions filed and briefed by that date. *Id.*

{¶ 4} The state asserts two assignments of error with the trial court's judgment dismissing the case:

> [I.] When a defendant makes a demand for DNA testing, the tolling of speedy trial is reasonable and appropriate pursuant to R.C. 2945.72(H) to allow for the completion of that testing.
>
> [II.] The trial court incorrectly ruled that the "savings" provision contained in R.C. 2945.73(C)(2) was inapplicable in this case.

{¶ 5} The right to a speedy trial in Ohio derives from interrelated constitutional and statutory sources. In addition to the rules set forth in R.C. 2945.71 through 2945.73, there are certain independent guarantees of a speedy trial deriving from the Sixth and Fourteenth Amendments of the United States Constitution and the Ohio Const., art. I, § 10. This case, though, is strictly based on the rights set forth under statute—the trial court held that Mohamed's constitutional rights to a speedy trial were not violated, (*see* Decision & Entry at 6), and Mohamed did not file a cross-appeal of this ruling.

{¶ 6} In *State v. Diallo*, 2013-Ohio-1248, (10th Dist.), this court summarized the law governing review of dismissals based upon speedy trial violations as follows:

> An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10. Ohio's speedy trial statutes, found in R.C. 2945.71 et seq., were implemented to enforce those constitutional guarantees. The speedy trial statutory provisions are mandatory and require strict compliance by prosecutors, as well as strict enforcement by the courts. If the trial court and prosecution fail to bring a defendant to trial within the time required, the trial court shall discharge the defendant.
>
> The proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72. Appellee faced felony charges in this case. Pursuant to R.C. 2945.71(C)(2), the state must bring a defendant arrested on felony charges to trial within 270 days of his arrest. If the defendant is held in jail in lieu of bail on the pending charge, each day counts as three days. R.C. 2945.71(E).
>
> Upon demonstrating that more than 270 days elapsed before trial, a defendant establishes a prima facie case for dismissal based on a speedy trial violation. Once a defendant establishes

a prima facie case for dismissal, the state bears the burden to prove that time was sufficiently tolled and the speedy trial period extended.

(Internal citations omitted.) *Diallo* at ¶ 8-10. "The time within which to bring a defendant to trial may be extended for the reasons set forth in R.C. 2945.72. . . . [And on appeal] we independently calculate whether the time to bring a defendant to trial expired." *State v. Williams*, 2023-Ohio-1002, ¶ 14 (10th Dist.).

{¶ 7} Additionally, a recent amendment to R.C. 2945.73(C)(2) provides:

Upon motion made at or before the commencement of trial, but not sooner than fourteen days before the day the person would become eligible for release pursuant to division (C)(1) of this section, the charges shall be dismissed with prejudice *unless the person is brought to trial on those charges within fourteen days after the motion is filed and served on the prosecuting attorney.* If no motion is filed, the charges shall be dismissed with prejudice unless the person is brought to trial on those charges within fourteen days after it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired. If it is determined by the court that the time for trial required by sections 2945.71 and 2945.72 of the Revised Code has expired, no additional charges arising from the same facts and circumstances as the original charges may be added during the fourteen-day period specified under this division. The fourteen-day period specified under this division may be extended at the request of the accused or on account of the fault or misconduct of the accused.

(Emphasis added.) *Id.* (effective April 4, 2023). Based on the foregoing text, the amendment is intended to create a 14 day "safe harbor" provision to allow the state the opportunity to remedy accidental errors in speedy-trial calculations.

{¶ 8} To begin our analysis in accordance with *Diallo*, Mohamed has established a prima facie case that his speedy trial rights were violated under R.C. 2945.71(C)(2), as there are 292 days between the date of his arrest and August 14, 2023, the scheduled date of the expiration of the final continuance in the case. Therefore, the state must demonstrate that either Mohamed waived his rights during that period or that the clock was tolled for a sufficient time for one of the reasons set forth in R.C. 2945.72.

{¶ 9} The trial court calculated the elapsed time as follows, stating its "triple count" calculation of days for the period Mohamed was incarcerated in parentheses:

- October 27, 2022 to November 15, 2022: 20 (60) days

- November 16, 2022 to April 3, 2023: Waived and/or tolled

- April 3, 2023 to May 16, 2023: 43 (129) days

- May 17, 2023 to May 24, 2023: Tolled

- May 25, 2023 to June 8, 2023: 15 (45) days

- June 9, 2023 to August 14, 2023: 67 days

- **SPEEDY TRIAL CALCULATION: 301 days / 270 days**

(Emphasis in original.) (Decision & Entry at 8-9.) The state argues that the trial court incorrectly charged the 129 triple-counted days between April 3, 2023 and May 16, 2023 against it, and contends this time should be tolled under either R.C. 2945.72(E) or 2945.72 (H). Those provisions state:

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by . . .
>
> (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
>
> [and/or] . . .
>
> (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion . . . ."

{¶ 10} The state presents two basic arguments in support of its position. First, it argues that the continuance from April 3, 2023 through May 18, 2023[2] was required because it was waiting for the results of DNA testing on a knife, which were necessary to complete the state's response to Mohamed's demand for discovery. It therefore contends

---

[2] Although the court's decision discusses the 43-day delay between April 3, 2023 and May 16, 2023, the actual continuance granted was for 45 days, from April 3, 2023 until May 18, 2023. Pursuant to its entry, the trial court concluded that May 17 and May 18, 2023 were tolled based on the fact that Mohamed had filed a motion for bond modification. (Decision & Entry at 8.) Accordingly, based on R.C. 2945.71(E), the court concluded that the 43-day delay resulted in the lapse of 129 days against the speedy trial clock.

that the entirety of this time was tolled under R.C. 2945.72(E) pursuant to *State v. Palmer*, 2007-Ohio-374. Second, the state asserts that the continuance during that period was granted "on the accused's own motion" or was a "reasonable continuance granted other than on the accused's own motion" under R.C. 2945.72(H).

{¶ 11} The trial court concluded that both arguments lacked merit, largely because there was no specific entry detailing which party requested the continuance during that period and because the defendant did not specifically waive his speedy trial right when the continuance was requested.

> The Court finds the delay of the April 3, 2023 trial date was not reasonable under R.C. 2945.72(H). The Court finds Defendant only requested the delay due to the multiple outstanding discovery requests which were not provided by the State. The Court finds the delay is attributable to the State of Ohio because discovery was incomplete nearly six (6) months after Defendant made his initial demand. The Court finds the ongoing discovery concerns violate Loc.R. 75.03. Even had Defendant signed a continuance entry on April 3, 2023, the need for a continuance was necessitated by the State of Ohio's failure to comply with Crim.R. 16 and Loc.R. 75.03. The Court finds this delay cannot be held against Defendant under *Cheatham*, supra. Therefore, the Court finds the delay from April 3 to May 16 is properly attributed to the State and not to Defendant.
>
> *Furthermore, the Court finds the delay from April 3, 2023 to May 16, 2023 was not waived by Defendant, and there was no other tolling event in that time period. Perhaps had the State of Ohio filed the continuance entry from April 3, 2023, it would shed light on who specifically requested the continuance, the reason for the continuance, and whether or not Defendant waived his speedy trial rights. Instead, the Court is left to guess, because there is no entry and the transcript is silent. The Court finds such delay is attributable to the State of Ohio.* For these reasons, the Court declines to issue a *nunc pro tunc* order finding Defendant's Speedy Trial rights were waived.

(Emphasis added.) (Decision & Entry at 7-8.)

{¶ 12} It is true that the state failed to obtain an express written waiver of speedy trial from Mohamed on April 3, 2023. The trial court attributes the lapse of 129 speedy-trial days between April 3, 2023 and May 16, 2023 to the state, by finding that the April 3

continuance was not reasonable under R.C. 2945.72(H) and also by finding that the period of the continuance could not be deemed tolled pursuant to R.C. 2945.72(E). The trial court based these conclusions on its belief that it was "left to guess [who requested the continuance and the reason for the continuance], because there is no entry and the transcript is silent." (Decision & Entry at 8.)

{¶ 13} But this belief is mistaken—the transcript of the April 3, 2023 hearing is not silent. Rather, it specifically addresses the issues causing delay, suggests a remedy for any unreasonable delay, and in fact indicates beyond doubt that the six-week delay in question was both reasonable and based on the court's own motion. The defense began the hearing by "requesting that the Court consider setting a discovery deadline" in the case, observing that "the DNA analysis" was still outstanding, and that there were "I believe, medical records from the alleged victim here that defense counsel has not received." (Apr. 3, 2023 Tr. at 3.) The court then noted that "discovery was initially provided by the State on January 4th of this year . . . [and supplemental discovery was provided] on January 30th and then February 23rd . . . ." *Id.* at 4.

{¶ 14} As to the medical records, the state responded that "we didn't have any . . . . I wasn't planning on using any or getting any [but] I have sent a release with instructions to several different addresses I have for the victim, who is transient, and I did get in touch with him by phone and he's supposed to be coming in this Thursday afternoon." *Id.* at 4-5. And as to the DNA testing, the state reported:

> The knife was sent out for lab testing towards the beginning of the case in late October, early November. My understanding is -- and I've, on a few different cases as well of this nature, that the lab is backed up. They're telling people about ten to twelve months, the Columbus Police Department crime lab. So they're very backed up.
>
> . . .
>
> [Defense Counsel and I also] went to go look at an item in evidence together, a piece of apparel. And we noticed that there were reportedly -- and we did see it ourselves -- things that looked like blood splatter that was not swabbed, that was not sampled in any way to be sent off to the lab. At that point, then I requested the detective to do so. And he did it the day following. That's going back --

THE COURT: Okay.

[THE STATE]: -- a little over a month now that that swab was taken, or a sample was taken from the jean jacket to be delivered to the lab.

So this is where we are. I don't have any of those three things. They are in the process. They're being worked on. But, I mean, this was pretty important evidence for the State and also relevant to the defense to help them determine what they need to do.

I have no objection to an extension of time for pretrial motions. But what I do believe is they wanted the evidence by filing a discovery demand, and we are working to get it to them. And I want it as well. So as far as setting a deadline for discovery, that may be a little premature.

*Id.* at 5-6. The court accepted this explanation, and then the court itself suggested continuing the case:

THE COURT: Do you have the calendar, Jeff? *Let's continue today's court date.* I'm looking the week of May 15th -- 15, 16, 17, 18.

[THE STATE]: The 15th is no good for me, but anytime other than that is good for me.

[THE DEFENSE]: Defense is supposed to be in trial the week of May 15th, but we can still set a case then.

THE COURT: Let's set it May 18th towards the end of the week. That will be a Thursday.

What I would suggest, [Defense Counsel], is that as we approach that date, if there are items that are not turned over or not made available, that you file a Criminal Rule 16 Motion For Sanctions, you know, talking about, you know, excluding evidence or other remedial measures that the Court could take. Because, I mean, certainly, I can't wait until September of 2023 for DNA on the knife to come back, so I don't know. But -- and I do appreciate, [Prosecutor], the work that you're doing to try to get it done.

Lets treat that May 18th kind of like a soft deadline for any discovery issues, and then that way that will give the State a chance to respond in writing before, you know, if the Court were going to take significant actions such as excluding certain

> items of evidence, I'd want to have, you know, a full record and
> a motion before the Court before considering an order like that,
> so [sic].

*Id.* at 6-8. Given that the trial court itself suggested the six-week continuance, that it suggested the defense file a motion in response to any failure to provide discovery within its "soft deadline," and both parties were involved in the setting of the continuance, the trial court erred by failing to hold that the continuance between April 3, 2023 and May 18, 2023 qualified as a tolling event under R.C. 2945.72(E) or that the continuance was reasonable under R.C. 2945.72(H). Indeed, the delay was clearly allowable under both subsections of the statute.

{¶ 15} Certainly, we do not mean to suggest that the proposed 11 month delay in obtaining the initial DNA results would have been reasonable—it was well within the trial court's prerogative to conclude that it was unreasonable on these facts, and it certainly seems to stretch the bounds of reasonability to this court; we do not believe that this type of delay is common or even generally acceptable. The state expressed frustration with the delay, but also noted that by agreement that the parties had sent additional evidence for testing "a little over a month" prior to the April 3, 2023 hearing, further delaying the results. *Id.* at 6.

{¶ 16} At the April 3, 2023 hearing, the court mused about whether the defense might consider filing a "Motion For Sanctions, you know, talking about, you know, excluding evidence or other remedial measures that the Court could take" in response to that type of delay. *Id.* at 7. The defense apparently chose not to request that the evidence be excluded but instead filed a motion to modify the defendant's bond, stating that "due to the issues that we're having here in discovery, [we're here] for the Court to consider releasing my client on house arrest." (May 24, 2023 Tr. at 16.) Under the circumstances the trial court's decision to reduce the defendant's set bail amount was certainly within its discretion. And the trial court never allowed the feared 11 month delay to occur, since it dismissed the case on August 24, 2023.

{¶ 17} We do not believe that the unique set of procedural facts that permitted delay to the defendant's trial are likely to recur, but neither do we believe that the overall delay was unreasonable, unconstitutional, or violative of the speedy-trial statute. Based on all the foregoing, we conclude that the trial court erred by counting the time between April 3,

2023 to May 16, 2023 against the speedy trial clock, and because Mohamed was incarcerated during that period, pursuant to R.C. 2945.71(E) the trial court counted 129 days against the speedy trial clock in error. When those days are eliminated from the speedy-trial calculation, only 172 of 270 allowable days had passed at the time the court sustained Mohamed's motion to dismiss. Therefore, we sustain the state's first assignment of error.

{¶ 18} In its second assignment of error, the state argues that the trial court erred by failing to allow it the opportunity to bring Mohamed to trial within the 14 days it asserts are allowed by the April 4, 2023 amendment to R.C. 2945.73(C)(2). However, based upon our resolution of the state's first assignment of error it is unnecessary for us to reach this issue.

{¶ 19} For all the foregoing reasons, we sustain the state's first assignment of error, overrule its second assignment of error as moot, reverse the judgment of the Franklin County Court of Common Pleas granting the defendant's motion to dismiss, and remand this case to that court for further proceedings consistent with this decision.

*Judgment reversed;*
*case remanded.*

MENTEL and BOGGS, JJ., concur.

———————————